UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILIAN AWAH TANDONG (A-Number: 221-421-966),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY DETENTION FACILITY,<br><br>Respondent. | Case No. 1:26-cv-5162-DAD-JDP<br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

On December 5, 2025, petitioner Lilian Awah Tandong entered the United States from Mexico and was detained by Border Patrol. Petitioner has been held in custody since that date. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241, on the basis that her detention, without a bond hearing, violates the Fifth Amendment. For the reasons outlined below, I recommend that the petition for writ of habeas corpus be granted.

**Background**

Petitioner is a 38-year-old registered nurse who worked at a Catholic hospital in Cameroon. ECF No. 1 at 20; ECF No. 6-1 at 5. She fled Cameroon after suffering physical and sexual assaults, and threats of death, from military personnel. ECF No. 1 at 5. Petitioner entered the United States at the southern border on December 5, 2025, without being inspected, admitted, or paroled by an immigration officer. ECF No. 1 at 5. Immigration authorities interviewed her

regarding her torture and assaults at the hands of military members in Cameroon. *Id.* Petitioner expressed a credible fear of return and was detained "pending asylum officer review." ECF No. 6-1 at 3. The Department of Homeland Security ("DHS") issued petitioner a notice of expedited removal. ECF No. 6-2 at 4.

On December 16, 2025, an asylum officer interviewed petitioner regarding her fear of return to her homeland. ECF No. 6-2 at 6. The asylum officer found petitioner credible regarding her fear of persecution on behalf of her political opinion. *Id.* at 9. The officer noted that there did not appear to be any bars to asylum or withholding of removal. *Id.* On December 17, 2025, DHS issued petitioner a new notice to appear, noting that "an asylum officer has found that [petitioner] has demonstrated a credible fear of persecution or torture." ECF No. 6-2 at 1.

Petitioner has remained in custody since her detention in December 2025. On February 25, 2026, the immigration judge granted DHS's motion to pretermit petitioner's asylum application based on a "safe-third-country-agreement" between the United States and Uganda. *See* ECF No. 6-3 at 1. The immigration judge noted that under the Asylum Cooperative Agreement between the United States and Uganda, "Uganda has generally committed to consider the protection requests of any third country national present in the United States." *Id.* at 2. The immigration judge found that DHS had provided petitioner reasonable notice of its intent to remove her to Uganda, and that petitioner failed to prove that she would be tortured or persecuted in Uganda. *Id.* The immigration judge noted that DHS was not "required to prove [that Uganda] will receive the [petitioner]" under BIA precedent. *Id.* at 3. Because of this determination, the immigration judge did not reach the merits of petitioner's asylum application or consider her request for other forms of humanitarian relief. *Id.* at 1. The immigration judge ordered petitioner removed to Uganda, a country where petitioner has never been and has no contacts. *Id.* at 2, 4. Petitioner appealed this decision to the BIA. ECF No. 6-3 at 5.

Petitioner has never been given a bond hearing in immigration court. ECF No. 1 at 16-17. Petitioner details the circumstances she is suffering in immigration detention, including profuse vaginal bleeding, two emergency medical trips from the facility to a local hospital, and anemia, which requires her to take medication. *Id.* at 6. Petitioner has close family members in the

United States, who have written supportive letters that she attaches to her petition. ECF No. 1 at 19-23.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that her prolonged detention absent a bond hearing violates her Fifth Amendment Due Process rights.[1] ECF No. 1 at 16-17. Respondent argues that petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii), which states, "If the officer determines at the time of the [asylum] interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum." ECF No. 6 at 2. Respondent further argues that petitioner was subjected to "expedited removal" under section 1225(b)(1), and that the finding of a "credible fear of persecution" and transfer of petitioner to the "standard removal proceeding" still rendered petitioner subject to "mandatory detention during that standard removal proceeding." *Id.* at 2-3. I

---

[1] Petitioner filed a motion for appointment of counsel. ECF No. 2. There currently exists no absolute right to appointment of counsel in habeas proceedings. *See Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." *See* Rule 8(c), Fed. R. Governing § 2254 Cases. I do not find that the interests of justice require appointment of counsel at the present time. Petitioner's motion to appoint counsel is therefore denied.

address the statutory framework before analyzing petitioner's due process claim. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008); *Solorzano-Ramirez v. Warden,* No. 1:26-CV-2540 DC CSK, 2026 WL 1257256, at *2 (E.D. Cal. May 7, 2026).

I must determine whether petitioner's detention is mandated by section 1225(b)(1)(B)(ii). Under section 1225(b)(1), if an immigration officer determines that a noncitizen "who is arriving in the United States" is inadmissible, the officer "shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see also* 8 U.S.C. § 1158(a)(2) (mandating that any noncitizen arriving in U.S. may apply for asylum). If the noncitizen indicates a fear of persecution, the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(B).

Respondent relies on section 1225(b)(1)(B)(ii) as the basis for petitioner's mandatory detention without a bond hearing. ECF No. 6 at 2. That subsection authorizes the post-asylum-interview detention of applicants for admission so that the government may provide "further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Respondent indicates that it moved petitioner into "full removal proceedings under 8 U.S.C. § 1229a" and argues that she is still subject to mandatory detention under 1225(b)(1)(B)(ii). ECF No. 6 at 2-3; *see Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) ("[R]ead most naturally, §§ 1225(b)(1) and (b)(2) mandate detention for applicants for admission until certain proceedings have concluded."). Respondent is mandatorily detaining petitioner under section 1225(b)(1)(B)(ii).

While petitioner's detention may be mandated by statute, that does not resolve her claim that her detention violates the Fifth Amendment.[2] At present, there is no binding authority that

[2] As respondent notes, the Supreme Court held that a noncitizen detained shortly after unlawful entry "has only those rights regarding admission that Congress has provided by statute" and "the Due Process Clause provides nothing more." *See* ECF No. 6 at 3-4 (quoting *Thuraissigiam*, 591 U.S. at 140). However, "*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to admissibility to the United States." *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023). Accordingly, "[w]hile *Thuraissigiam* limits an arriving noncitizen's due process rights in regard to admission, a petitioner may still assert a due process claim against prolonged mandatory detention without a bond hearing." *Singh v. Noem*, No. 26-cv-0265-GPC-BLM, 2026 WL 206716, at *5 (S.D. Cal.

squarely addresses petitioner's due process claim. In *Zadvydas*, the Supreme Court addressed a challenge to prolonged detention in a different context—under 8 U.S.C. § 1231(a)(6)—and held:

> We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence.

533 U.S. at 701 (internal quotation marks and citation omitted).

However, in *Demore v. Kim*, the Supreme Court rejected a due process challenge to section 1226(c)—which, like section 1225(b), mandates detention—and distinguished *Zadvydas* because, unlike indefinite detention pending removal under section 1231(a)(6), mandatory detention under section 1226(c) has a "definite termination point," i.e., the conclusion of removal proceedings. 538 U.S. 510, 529 (2003). The Court held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id*. at 531.

After *Demore*, the Court of Appeals held that detention under sections 1225(b), 1226(a), and 1226(c) has an implicit six-month limit, at which time the government must justify continued detention by clear and convincing evidence at a bond hearing. *Rodriguez v. Robbins*, 804 F.3d 1060, 1078-85 (9th Cir. 2015). But the Supreme Court reversed, finding that none of the statutory provisions can reasonably be read to limit detention to six months. *Jennings*, 583 U.S. at 297-306. As the Court of Appeals noted on remand, however, the Supreme Court "declined to reach the constitutional question" and "instead chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings." *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018).

"In the wake of *Jennings*, district courts have grappled with how to address due process challenges to prolonged mandatory detention under § 1225(b)." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Nonetheless, "[n]early all district courts that have

---

Jan. 27, 2026).

considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id*. (collecting cases) (internal quotation marks omitted).

Accordingly, I will evaluate petitioner's eight-month-long detention without bond hearing under the Due Process Clause, which protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to [the Fifth Amendment's] constitutional protection."); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025). "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." *Tinoco v. Noem*, No. 1:25-cv-01762-DC-JDP (HC), 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing *Zadvydas*, 533 U.S. at 690).

"Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b)."[3] *Salamakhin v. Noem*, No. CV-26-00330, 2026 WL 1250296, at *5 (D. Ariz. May 6,

---

[3] *See, e.g.*, *Doe v. Andrews*, 1:25-cv-0333-JLT-HBK, 2026 WL 797694, at *9-11 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor *Lopez* test, deeming it a "truncated" version of the *Banda* test) (citing *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)); *Akmal v. Warden of Cal. City Det.*, No. 1:25-cv-1921-DC-DMC, 2026 WL 657606 (E.D. Cal. Mar. 9, 2026), *report and recommendation adopted*, 2026 WL 825750 (E.D. Cal. Mar. 25, 2026) (applying *Lopez*); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-0098-SAB, 2025 WL 2099343, at *6 n.6 (E.D. Cal. July 25, 2025) (applying the *Lopez* test where both parties only addressed the *Mathews* test in their briefing); *Galkin v. Scott*, No. 2:26-cv-0530-TLF, 2026 WL 632663, at *2-5 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-0043-SEB-KMB, 2026 WL 851289, at *2-4 (S.D. Ind. Mar. 27, 2026) (applying the same 6-factor test, but calling it the *Jamal A.* test) (citing *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 WL 143150, at *4-5 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test)

2026). The three main tests are: (1) the general due process assessment under *Mathews*, 424 U.S. 319; (2) the six-factor test announced in *Banda*, 385 F. Supp. 3d at 1118; and (3) the test announced in *Lopez*, 631 F. Supp. 3d at 879, where the court determined whether prolonged mandatory detention under section 1226(c) violates the Due Process Clause by considering three factors: "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government."[4]

"While the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case."[5] *Banda*, 385 F. Supp. 3d at 1118. Similarly, the two factors employed in *Banda* but not *Lopez*—the conditions of detention and the likelihood that the removal proceedings will result in a final order of removal—"are not particularly suited to assisting the Court in determining whether detention has become unreasonable and due process requires a bond hearing." *Lopez*, 631 F. Supp. 3d at 879. Moreover, "[t]hough *Lopez* concerned a due process challenge to mandatory detention under § 1226(c), the factors enumerated there are, in essence, a truncated version of the factors enumerated in *Banda*, which concerned mandatory detention under § 1225(b)(1)." *Doe v. Andrews*, No. 1:25-cv-0333-JLT-HBK, 2026 WL 797694, at *10 (E.D. Cal. Mar. 23, 2026). I have previously used the *Lopez* test to determine whether due process requires a bond hearing for a noncitizen detained under section 1225(b) and will continue to do so. *Hasan M.D. v. Warden of*

---

(citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)); *Mkrtich v. Warden, California City Corr. Ctr.*, No. 1:26-cv-4042-DAD-JDP, 2026 WL 2098314 (E.D. Cal. July 21, 2026) (applying *Mathews*).

[4] The *Lopez* test utilizes three factors from the *Banda* test. *Lopez*, 631 F. Supp. 3d at 877-79. In *Banda*, to determine whether prolonged mandatory detention under section 1225(b) violates the Due Process Clause, the court also considered "the conditions of detention" and "the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A.*, 358 F. Supp. 3d at 858-59).

[5] If I analyzed petitioner's claim under *Mathews*, I still would conclude that petitioner is entitled to relief because: (1) she has a significant private interest that is affected by detention; (2) the risk of an erroneous deprivation is high without a bond hearing; and (3) the government's interest in withholding a bond hearing is relatively low. *See* 424 U.S. at 335. I also note that petitioner has no prior criminal history, no bars to applying for withholding of removal, a credible fear of return to her home county, and multiple supportive family members in the United States.

*the Cal. City Det. Ctr.*, No. 2:26-cv-0282-DJC-JDP, 2026 WL 972658, at *1 (April 10, 2026), *report and recommendation adopted*, 2026 WL 1051852 (E.D. Cal. Apr. 17, 2026).

I consider each factor in turn.

**I. Total Length of Detention**

The first factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. "It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Petitioner has been detained for eight months, which is a significant period of time that multiple courts have found weigh strongly in favor of relief. *See*; *Ramon v. Blanche*, No. 26-cv-2849-CFE, 2026 WL 1836006, at *2 (C.D. Cal. June 17, 2026) (seven months); *Haidari v. ICE.*, No. 2:26-cv-0039-TL, 2026 WL 764689, at *3 (W.D. Wash. Mar. 18, 2026) (six months); *Amando v. DOJ*, No. 25-cv-2687-LL-DDL, 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) (seven months); *Gurung v. Larose*, No. 26-cv-0920-LL-MSB, 2026 WL 776841, at *4 (S.D. Cal. Mar. 19, 2026) (eight months).

As petitioner has been detained for eight months without a bond hearing, this factor weighs in her favor.

**II. Likely Duration of Future Detention**

Second, the court must determine "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up). Petitioner was found credible by immigration authorities and applied for asylum based upon the sexual and physical abuse which she sustained from members of the Cameroon military, an account that was found credible by an asylum officer. ECF No. 1 at 5; ECF 6-2 at 9. However, petitioner's credible application for asylum was never considered by the immigration judge. ECF No. 6-3 at 1-4. Rather, DHS moved to pretermit her asylum case based on their claim that she could be removed to Uganda, a country with which she has no prior contact. *Id.* at 1. Petitioner

appealed the removal order to Uganda and that appeal is pending. *Id.* at 5.

The pending BIA appeal warrants weighing this factor in petitioner's favor. *See Arido-Sorro v. Garland*, No. 23-cv-0842-PHX-JAT, 2024 WL 4393264, at *4 (D. Ariz. Sept. 5, 2024), *report and recommendation adopted*, 2024 WL 4834413 (D. Ariz. Nov. 20, 2024) ("Courts have recognized that the possibility of prolonged appeals weighs in favor of finding that continued detention without a bond hearing violates due process."); *Loba L.M. v. Andrews*, No. 1:25-cv-0611-JLT-SAB-HC, 2025 WL 2939178, at *6 (E.D. Cal. Oct. 16, 2025), *report and recommendation adopted*, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025) (finding that "[a]lthough future events are difficult to predict, the Court nevertheless finds that the pending appeal before the BIA and possible remand to the immigration court for further proceedings or possible judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner"); *Bojorge-Sequeira v. Geo Grp. Inc.*, No. 2:25-cv-1807-KKE-GJL, 2026 WL 288378, at *5 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted*, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026) (finding this factor weighed in favor of the petitioner who had appealed the Immigration Judge's decision to the BIA).

BIA appeals may take a substantial period. "Courts have found that pending administrative and possible Ninth Circuit appeals can be 'sufficiently lengthy' such that it favors Petitioner's ability to be heard." *Kaur v. Lyons*, No. 26-cv-0217-PHX-KML, 2026 WL 967846, at *5 (D. Ariz. Mar. 24, 2026), *report and recommendation adopted*, 2026 WL 963792 (D. Ariz. Apr. 9, 2026); *see also Abdul-Samed*, 2025 WL 2099343, at *7 (citing *German Santos v. Warden*, 965 F.3d 203, 211 (3d Cir. 2020)); *Arechiga v. Archambeault*, No. 2:23-cv-0600-CDS-VCF, 2023 WL 5207589, at *4 (D. Nev. Aug. 11, 2023) ("It is anyone's guess how long it will take the BIA to reconsider [the] petition . . . or how long subsequent appeals of that decision might take.").

The fact that Petitioner is at the beginning of the appeal process is instructive. *See Banda*, 385 F. Supp. 3d at 1119 ("If the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit. This process may take up to two years or longer."). Accordingly, the potential length of detention during petitioner's appeal to the BIA and possible appeals to the

Ninth Circuit Court of Appeals weighs strongly towards granting petitioner relief.

Accordingly, I find that the second factor also weighs in favor of petitioner.

**III. Delays in Removal Proceedings Caused by Petitioner and Respondent**

Lastly, the court must consider the nature and extent of delays caused by petitioner and the government. Petitioner was detained on December 5, 2025. ECF No. 1 at 5. Respondent brought her before an immigration judge in February 2026. ECF No. 6-3 at 1. Petitioner promptly appealed the February 25, 2026 immigration court order to the BIA. As I cannot determine the reason for the delay in the removal proceedings, I find that this factor is neutral.

Two of the three factors, including the total length of detention, "which is the most important factor," *Banda*, 385 F. Supp. 3d at 1118, and the likely duration of future detention weigh strongly in petitioner's favor. Accordingly, a weighing of the *Lopez* factors supports a finding that petitioner's detention, absent a bond hearing, violates her Fifth Amendment Due Process rights. Given this finding, I must determine the appropriate relief.

Petitioner requests release. ECF No. 1 at 17. Respondent does not address the issue. *See* ECF No. 6. I recommend that petitioner be immediately released. Habeas corpus is an equitable remedy, and "[f]ederal courts have a fair amount of flexibility" to tailor the remedy to the constitutional violation. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005); *see also Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) ("Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

Respondent has provided no evidence or argument to support any risk of flight or danger if petitioner is released. Petitioner is a nurse who fled her home country after experiencing physical and sexual abuse at the hands of military members. ECF No. 1 at 5. An asylum officer found her credible and determined that there were no bars to humanitarian relief. ECF No. 6-2 at 9. Petitioner filed an asylum application, which the immigration court did not consider because the government instead sought an order authorizing her removal to Uganda, where she has no connections. *See* ECF No. 6-3 at 1. As a consequence of the sexual abuse she suffered, petitioner is experiencing ongoing, severe medical consequences in custody. ECF No. 1 at 6. She has been

detained since December 2025, with no end in sight. Multiple family members in the United States have submitted letters in support of her release. *Id.* at 19-23. For all these reasons, I recommend her immediate release.

**Conclusion**

Accordingly, it is hereby ORDERED that petitioner's motion for appointment of counsel, ECF No. 2, is DENIED.

Further, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 221-421-966) from its custody on the same conditions as his prior release. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

1991).

IT IS SO ORDERED.

Dated: August 7, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE